**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**DOCKET NO. 3:19-CV-00522-FDW-DSC**

| | |
|---|---|
| SERIES 1 OF OXFORD INSURANCE COMPANY NC, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BUCKLEY LLP, <br><br> Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BUCKLEY LLP'S MOTION TO DISMISS THE COMPLAINT** |

## I.     BOTTOM LINE UP FRONT

In its haste to bring this state law case against its customer in federal court, Plaintiff Series 1 of Oxford Insurance Company NC, LLC ("Oxford") overlooked—or chose to ignore—the fundamental requirement of ensuring that the Court has jurisdiction to hear the case. Oxford's Complaint asserts that the Court has subject matter jurisdiction under 28 U.S.C. § 1332 based on diversity of the parties.  Oxford, however, did not plead the facts necessary to support that diversity allegation.  Oxford cannot plead such facts because one of Defendant Buckley LLP's ("Buckley") partners is a U.S. citizen domiciled abroad—a fact that defeats diversity jurisdiction—as to Buckley.  *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828–29 (1989); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 184 (3d Cir. 2008); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003).

To be sure, Oxford's Complaint is entirely without merit, and in fact Oxford has acted deceptively and in bad faith to avoid paying Buckley's valid insurance claim.  But those are

matters that must be addressed elsewhere because there is no basis for federal jurisdiction in this case.[1]  Accordingly, Buckley respectfully moves to dismiss the Complaint.

## II.     LEGAL STANDARDS

"When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff.  In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

## III.    RELEVANT JURISDICTIONAL FACTS

Oxford's Complaint alleges that "[t]he residence of the members of the Oxford limited liability company are diverse from the residence of the partners of Buckley, and thus there is complete diversity of this action."  Compl. ¶ 4.  No actual facts are offered in support of this (erroneous) legal conclusion.  Oxford does not reveal who its members are, in what state each member is a citizen, or in what state each Buckley partner is a citizen.  Oxford has thus failed to plead the facts necessary to establish diversity among the parties.

Oxford correctly states that Buckley "is an international law firm . . . organized as a limited liability partnership . . . under the partnership law of the District of Columbia."  *Id.* ¶ 3.  But the remaining facts necessary to resolve this motion are not addressed in the Complaint.

---

[1] In fact, these matters will be addressed in state court.  On October 29, 2019, Buckley filed a complaint against Oxford in Mecklenburg County Superior Court, asserting claims against Oxford for breaches of contract, unfair and deceptive trade practices, breach of the duty of good faith and fair dealing, and tortious refusal to settle an insurance claim.  *See* Declaration of Joshua D. Davey, Ex. A (Complaint in Case No. 19-CVS-21128).

Rather, they are set forth in the accompanying sworn declaration of Buckley partner James T. Parkinson and summarized below. As noted above, the Court is permitted to consider this evidence in resolving a Rule 12(b)(1) challenge to its jurisdiction.

Parkinson is a lawyer and has been an equity-holding partner of Buckley since January 2016. Decl. of James T. Parkinson ("Parkinson Decl.") ¶ 3. In 2014, Buckley decided to open a new office in London, and Parkinson agreed to move to London to take charge of that effort. *Id.* ¶ 4. Buckley announced the move in a press release, still available on its website, stating that Parkinson "has *relocated* from the firm's Washington, DC office to be its *London partner-in-residence*." *Id.*, Ex. A (emphasis added).

Thus, in August 2014, Parkinson moved to London and has worked from Buckley's London office ever since. *Id.* ¶ 6. In his Declaration, Parkinson explains that his practice is focused on providing advice on U.S. law to clients based in the United Kingdom and Europe, and that part of his standard "pitch" to such clients is that he will be fully available to them because he lives and works in London; he is not "flying in and out of London." *Id.* ¶ 9. In addition, Parkinson is a member of several professional and social clubs based in London, including the Society for English and American Lawyers, the Fraud Lawyers Association, Transparency International U.K., the Royal Institute of International Affairs (also known as Chatham House), and the International Bar Association. *Id.* ¶ 10.

When Parkinson first moved to London, he obtained a visa from the United Kingdom entitling him to work there for three years. *Id.* ¶ 7. The visa, which was based on Parkinson's employment with Buckley, has since been extended twice, each time for two years, and currently runs through July 2021. *Id.* Because Parkinson now intends to remain in the United Kingdom. indefinitely, he consulted with U.K. counsel earlier this year about applying to the United

Kingdom for "Indefinite Leave to Remain," an immigration status that would enable him (and his family) to remain in the United Kingdom for as long as he wants and without being tied to any particular employer. *Id.* ¶ 8. Parkinson plans to file his application for "Indefinite Leave to Remain" in the United Kingdom early next year. *Id.*

Parkinson's family accompanied him when he moved to London in 2014 and have resided there continuously since then. *Id.* ¶ 11. They rent a home in London where they keep significant personal property and household furnishings. *Id.* They also rent a country home in Oxfordshire. *Id.* Parkinson also owns a car in the United Kingdom. *Id.* His children attend school in London. *Id.* ¶ 12. Parkinson has a U.K. driver's license and bank account. *Id.* ¶¶ 13–14. His regular doctors and dentist are in London. *Id.* ¶ 15.

Parkinson pays income tax to the United Kingdom and in the United States. *Id.* ¶¶ 16, 25. For his U.S. income taxes, he is eligible for an extension of the deadline to file his U.S. tax return based on a provision of the tax code for "United States citizens or residents whose tax homes and abodes, in a real and substantial sense, are outside the United States and Puerto Rico." 26 C.F.R. § 1.6081-5(a)(5); *see* Parkinson Decl. ¶ 25. He takes tax advice from personal tax advisors based in London. Parkinson Decl. ¶ 25.

In sum, Parkinson's sworn Declaration establishes that after living in London for more than five years, Parkinson now considers himself a United Kingdom resident and has no intention to reside anywhere else. *Id.* ¶¶ 18, 26.

## IV.    ARGUMENT

To carry its burden of establishing diversity jurisdiction, Oxford must establish complete diversity—that is, that the plaintiff and the defendant are "citizens of different States." It cannot do so here because Buckley, as a partnership, carries the citizenship of each of its partners. And one of its partners, Parkinson, is not a citizen of any State because he is a U.S. citizen domiciled

4

abroad.  Therefore, as many other cases have held in similar circumstances, Buckley is not subject to diversity jurisdiction.

> **A.     Oxford Must Establish That Each of Buckley's Partners is a "Citizen of a Different State."**

The diversity jurisdiction statute permits federal district courts to exercise jurisdiction over civil actions "between citizens of different States" where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).[2]  As the Fourth Circuit has explained, "[t]he requirement that the controversy be between 'citizens of different States' has been interpreted to require complete diversity between the plaintiffs and defendants.  In other words, to sustain diversity jurisdiction there must exist an actual, substantial controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." *Hugger v. Rutherford Inst.*, 63 F. App'x 683, 687 (4th Cir. 2003) (citations omitted). Thus, it is black-letter law that a "party seeking to invoke diversity jurisdiction has the burden of showing complete diversity of citizenship." *Hardaway v. Checkers Drive-In Rests., Inc.*, 483 F. App'x 854, 854 (4th Cir. 2012).

It is equally well-established that "a limited liability partnership is a citizen of each state in which its partners are citizens." *RAI Credit LLC v. WeiserMazars LLP*, 2013 WL 3776518, at *2 (D.S.C. July 17, 2013) (citing *Moreno Energy, Inc. v. Marathon Oil Co.*, 884 F. Supp. 2d 577, 580 (S.D. Tex. 2012)).  In a case involving a limited partnership, the Supreme Court "reject[ed] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members.  We adhere to our oft-

---

[2] The statute also permits federal jurisdiction in disputes in certain situations involving "citizens or subjects of a foreign state."  28 U.S.C. §§ 1332(a)(2), (a)(3).  Those provisions, however, do not apply to a U.S. citizen domiciled abroad, such as Parkinson, because such individuals are not "citizens or subjects of a foreign state." *See Newman-Green, Inc.*, 490 U.S. at 828.  Oxford did not invoke either of those provisions in its Complaint, nor would they be available in any event.

repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members,' 'the several persons composing such association,' [and/or] 'each of its members.'" *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96, (1990) (citations omitted).

The combined effect of these two settled legal principles is that a plaintiff seeking to establish diversity jurisdiction against a defendant partnership must establish that **each partner** is diverse from the plaintiff.

### B.      U.S. Citizens Domiciled Abroad Are Not Subject to Diversity Jurisdiction.

"In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc.*, 490 U.S. at 828. "As the Supreme Court has consistently held [], state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile." *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998).

A U.S. citizen domiciled abroad is not a citizen of any State for purposes of diversity jurisdiction, and thus is not subject to diversity jurisdiction. *Newman-Green, Inc.*, 490 U.S. at 828 ("[A] United States citizen domiciled in Caracas, Venezuela . . . has no domicile in any State. He is therefore 'stateless' for purposes of [diversity jurisdiction]."); [3] *Swiger*, 540 F.3d at 184 ("An American citizen domiciled abroad, while being a citizen of the United States is, of course, not domiciled in a particular state, and therefore such a person is 'stateless' for purposes of diversity jurisdiction. Thus, American citizens living abroad cannot be sued (or sue) in

---

[3] In *Newman-Green, Inc.*, the Supreme Court addressed subsection (3) of the diversity statute, which permits jurisdiction over cases between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). But the determination that a natural person domiciled abroad is "stateless" applies equally to subsection (1), which uses the same key language— "citizens of different States." As noted above, subsection (3) does not apply here because Parkinson is not a "citizen[] or subject[] of a foreign state." *See Newman-Green, Inc.*, 490 U.S. at 828.

federal court based on diversity jurisdiction as they are neither 'citizens of a State,' nor 'citizens or subjects of a foreign state.'" (citations omitted)); *Whitehead v. Grand Duchy of Lux.*, 1998 WL 957463, at \*5 (4th Cir. Sep. 11, 1998) (holding that diversity jurisdiction "does not include United States citizens domiciled abroad, for they are neither aliens nor citizens of any state. . . . The presence of a single such expatriate party destroys diversity jurisdiction for the entire action"); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69 (2d Cir. 1990) ("[T]he language of §1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity." (citations omitted)).

Based on the foregoing principles, courts have repeatedly held that partnerships are not subject to diversity jurisdiction if any partner is a U.S. citizen domiciled abroad, as Parkinson is here. *Swiger*, 540 F.3d at 184 ("Putting these principles together, that is, that the citizenship of the individual partners must be shown to be wholly diverse from that of the opposing party (or those of the opposing parties) and that American citizens living abroad cannot sue (or be sued) in federal court based on diversity jurisdiction, our sister circuits and other federal courts have concluded that if a partnership has among its partners any American citizen who is domiciled abroad, the partnership cannot sue (or be sued) in federal court based upon diversity jurisdiction."); *ISI Int'l, Inc.*, 316 F.3d at 733 ("One of [defendant law firm's] partners is a U.S. citizen domiciled in Canada; she has no state citizenship, so diversity jurisdiction is unavailable."); *Cresswell*, 922 F.2d at 69 ("If in fact any of S&C's foreign-residing United States citizen partners are domiciled abroad, a diversity suit could not be brought against them individually; in that circumstance, since for diversity purposes a partnership is deemed to take on the citizenship of each of its partners, a suit against S&C could not be premised on diversity." (citations omitted)).

### C.     Parkinson is a U.S. Citizen Domiciled Abroad.

To determine an individual's domicile, the Court must consider two factors: "(1) the party's physical presence in the state; [and] (2) the intent to remain in that state indefinitely." *Estate of Allison v. Scoggins*, 2010 WL 11520169, at *4 (W.D.N.C. Sept. 22, 2010), *adopted by* 2011 WL 13082701 (W.D.N.C. Feb. 9, 2011) (citations omitted).  Put another way, an "individual may acquire a new domicile by changing his or her physical presence to the new location, combined with the intention to remain in the new location indefinitely or with the absence of any intention to go elsewhere." *Integrity Life Ins. Co. v. Komara*, 2015 WL 1607933, at *3 (W.D.N.C. Apr. 8, 2015) (citing 13E Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3613 (1st ed. 2009)).

Here, the evidence in Parkinson's Declaration establishes that he is a U.S. citizen who is domiciled in the United Kingdom.  He has worked in Buckley's London office and resided in the United Kingdom with his family for more than five years.  Parkinson Decl. ¶ 18.  Parkinson is a member of several professional organizations based in London.  *Id.* ¶ 10.  He rents a home in London, where he keeps substantial personal property and household furnishings, and a country home in Oxfordshire.  *Id.* ¶ 11.  His children attend school in London.  *Id.* ¶ 12.  He owns a car, and is licensed to drive in the United Kingdom.  *Id.* ¶¶ 11, 13.  He has a bank account, doctors, a dentist, and accountants in the United Kingdom.  *Id.* ¶¶ 13–15, 25.  He pays taxes in the United Kingdom.  *Id.* ¶ 16.  For his U.S. income taxes, he is eligible for an extension to file his U.S. tax return under a provision of the tax code for U.S. citizens "whose tax homes and abodes, in a real and substantial sense, are outside the United States and Puerto Rico."  26 C.F.R. § 1.6081-5(a)(5); *see id.* ¶ 25.  Most importantly, Parkinson intends to continue living in the United Kingdom and has no plans to reside elsewhere—an intention confirmed by Parkinson's forthcoming application for "Indefinite Leave to Remain" status under U.K. immigration law.

*Id.* ¶¶ 8, 18, 26.  This evidence overwhelmingly establishes that Parkinson's domicile is in the United Kingdom.

## V.     CONCLUSION

As many other courts have held, a partnership with a partner who is a U.S. citizen domiciled abroad is not subject to diversity jurisdiction in the federal courts.  In this case, Parkinson is just such a partner.  Accordingly, Buckley respectfully requests that the Court dismiss the Complaint.

Dated: October 30, 2019

/s/ *Joshua D. Davey*
Joshua D. Davey (N.C. Bar No. 35246)
Andrew D. Atkins (N.C. Bar No. 44188)
McGuireWoods LLP
201 N. Tryon Street, Suite 3000
Charlotte, NC  28202
Telephone:  (704) 343-2000
Facsimile:   (704) 343-2300
jdavey@mcguirewoods.com
aatkins@mcguirewoods.com

Mary Ellen Goode (N.C. Bar. No. 50733)
McGuireWoods LLP
434 Fayetteville Street, Suite 2600
Raleigh, NC 27601
Telephone:  (919) 755-6600
Facsimile:   (919) 755-6900
mgoode@mcguirewoods.com

John K. Villa (*pro hac vice* forthcoming)
William T. Burke (*pro hac vice* forthcoming)
Elizabeth Wilson (*pro hac vice* forthcoming)
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 434-5000
Facsimile:   (202) 434-5029
jvilla@wc.com
wburke@wc.com
ewilson@wc.com

*Attorneys for Defendant Buckley LLP*

9

**CERTIFICATE OF WORD COUNT**

I hereby certify that, as reported by word processing software, the foregoing Memorandum (omitting the case caption and any table of contents, table of authorities, or certificates of counsel) complies with the word limitation set forth in applicable Orders entered by the Honorable Frank D. Whitney.

/s/ *Joshua D. Davey*
Joshua D. Davey (N.C. Bar No. 35246)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum of Law was served on all counsel of record on October 30, 2019, using the Court's ECF system, which will send a notification of such filing.

/s/ *Joshua D. Davey*
Joshua D. Davey (N.C. Bar No. 35246)